UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JIMMIE LEON GORDON,

                Plaintiff,

v.

S. BURT et al.,

                Defendants.

_____/

Case No. 1:21-cv-415

Honorable Janet T. Neff

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    **Factual allegations**

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Warden

S. Burt, Deputy Warden D. Steward, and Head Librarian E. Hardiman in their respective individual capacities.

Plaintiff alleges that on July 27, 2020, Defendant Burt notified the general population of the prison that the facility had encountered its first COVID-19 case.  On July 31, 2020, Defendants Burt and Steward instructed Housing Unit 2 officers to arrange for the close-contact Unit 2 prisoners to be transferred to Plaintiff's housing unit, Housing Unit 1.  Plaintiff states that Defendants Burt and Steward failed to effectively isolate the close-contacts from the non-close-contact prisoners who already resided in Unit 1.  The close-contact prisoners were allowed to access the restrooms, showers, TV-room, and day-room along with the other prisoners.

During this time, Plaintiff was assigned as a Unit 1 porter.  Plaintiff states that neither he nor any of the other porters in Unit 1 were ever instructed to sanitize the areas occupied by the close-contact prisoners.  On August 2, 2020, Plaintiff and other prisoners began to orally grieve the reckless handling of close-contact prisoners.  Consequently, Defendants Burt and Steward devised a plan to move all the original Unit 1 prisoners in the gymnasium, which had been converted into a dormitory style housing space.  Bunk beds in the unit were less than 6 feet apart and the only source of ventilation was two floor model industrial fans.  Plaintiff made a verbal complaint regarding the lack of space to Unit 1 officers Jones and Posvistak, who told Plaintiff that he could house in the gymnasium or in segregation, and that they were just following orders.  Approximately three to four days later, Plaintiff began to experience body pain, fatigue, and excessive sweating.  On August 5, 2020, Plaintiff was informed that he had tested positive for COVID-19 and was to be moved to isolation housing.

Plaintiff states that he is thirty-eight years old and is functionally illiterate.  Therefore, Plaintiff made a request to Defendant Hardiman for a legal writer to help him file an

administrative grievance.  Defendant Hardiman denied Plaintiff's request, but Plaintiff was able

to find another prisoner who agreed to help him file a grievance, as well as the instant lawsuit.

Plaintiff claims that Defendants violated his Eighth Amendment rights, his First

Amendment right to access the courts, and his rights under the Americans with Disabilities Act

(ADA), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C.

§ 794(a), because he was denied the benefit of the MDOC administrative grievance process

because of his disability of functional illiteracy.  Plaintiff seeks compensatory and punitive

damages.

## II.    **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. **Eighth Amendment**

Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit addressed, in the context of a class challenge under 28 U.S.C. § 2241, whether the petitioners could demonstrate a likelihood of success on their Eighth Amendment claim sufficient to support a preliminary injunction. The court found that the class of medically vulnerable inmates housed at the Bureau of Prisons (BOP) Elkton facility could not show a violation simply because they were housed in dormitory style units. The court reasoned that, while the risks of COVID-19 easily satisfied the objective prong, the petitioners could not demonstrate that the BOP's response to the serious risks posed by COVID-19 met the subjective prong of the Eighth Amendment standard. *Id.* at 840. The court reasoned that the question on the subjective prong was whether the BOP "responded reasonably to the risk." *Id.* at 840–41. Detailing the measures employed by the BOP to reduce the risk of transmission, the court concluded that the BOP's efforts "demonstrate the opposite of a disregard of a serious health risk." *Id.* at 841. The court noted that its decision was consistent with the findings of other circuits. *Id.* at 842 (citing *Swain v. Junior*, 958 F.3d 1081 (11th Cir. 2020) (per curiam); *Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020) (per curiam); *Marlowe v. LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)).

Two days later, in *Cameron v. Bouchard*, 818 F. App'x 393, 395–96 (6th Cir. 2020), the Sixth Circuit granted the defendants' emergency motion to stay an injunction

requiring the identification to the court of all medically vulnerable inmates at the Oakland County

Jail, an injunction they earlier had upheld, on the strength of *Wilson v. Williams*.  The Sixth Circuit

subsequently vacated the preliminary injunction, stating that in light of the holding in *Wilson v.*

*Williams*, the plaintiffs had failed to allege facts showing that jail officials acted with reckless

disregard to the serious risk posed by COVID-19.  *Cameron v. Bouchard*, 815 F. App'x 978

(6th Cir. 2020).

    In this case, Plaintiff claims that Defendants Burt and Steward placed him at risk

by moving prisoners who had been in close contact with infected prisoners into Unit 1, where

Plaintiff resided, and allowing those prisoners to share communal areas with uninfected prisoners.

In addition, Plaintiff claims that Defendants further violated his rights by placing him and other

original Unit 1 prisoners in the gymnasium, which had been converted into a dormitory style

housing space.  However, Plaintiff does not allege facts showing that Defendants Burt and Steward

knowingly exposed Plaintiff, or any other prisoner, to a COVID-19 positive prisoner.  The mere

fact that close-contact prisoners were housed in the same unit does not necessitate a finding that

they were housed in the same cells as COVID-19 negative prisoners, or that they were allowed to

be in the communal areas of the unit unmasked and to use those areas at the same time uninfected

prisoners were present.  Nor does Plaintiff allege facts showing that he has underlying conditions

that make him especially vulnerable to COVID-19.

    While a complaint need not contain detailed factual allegations, a plaintiff's

allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555.  The court

must determine whether the complaint contains "enough facts to state a claim to relief that is

plausible on its face."  *Id.* at 570.  The court need not accept "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court notes that the MDOC has taken significant measures to limit the threat posed by COVID-19.[1] *See* MDOC, *MDOC Response and Information on coronavirus (COVID-19)*, https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (last visited Oct. 8, 2021).[2] The Court notes that Michigan State Industries produced masks for all prisoners and correctional facility staff to wear that can be laundered and worn again, and that each employee and prisoner received three masks. *Id.* In addition, with regard to the quarantine and care of sick prisoners, the MDOC instituted the following:

- Facility healthcare staff will meet with prisoners who have presented with symptoms of coronavirus. The MDOC does not make the diagnosis of the coronavirus. The department is following the Michigan Department of Health and Human Services protocol.

---

[1] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

[2] Although the page is hosted on Medium.com, the MDOC specifically links to this page from their website as the location where they will provide updates and information. *See* https://www.michigan.gov/corrections/0,4551,7-119-9741_12798-521973--,00.html (last visited Oct. 14, 2021).

- Prisoners who test positive for the virus are isolated from the general population and any prisoners or staff they have had close contact with are identified and notified of the need to quarantine.

- Prisoners who test positive may be transferred to the department's designated quarantine unit at Carson City Correctional Facility. This unit is completely separated from the main facility, has limited movement and access to the unit is limited. Only a small number of designated staff work in the unit in 12-hour shifts to limit the number of people entering. Those staff members report directly to the unit and do not enter the main correctional facility. Prisoners transferred to the unit also stay on the unit and do not enter any other areas of the prison.

- Prisoners who have been identified as having close contact with another prisoner who tests positive, but have not tested positive for the virus themselves, will be isolated from the general population at their facility for the 14-day quarantine period.

- Co-pays for prisoners who need to be tested for COVID-19 have been waived.

- Prisoners have been urged to notify healthcare if they are sick or experiencing symptoms of illness so they can be evaluated. Prisoners who require outside medical attention will be transported to an area hospital for treatment.

- Prisoners are considered in step-down status when they no longer have symptoms, are no longer considered contagious and have been medically cleared by our chief medical officer.

*Id.*

As noted above, the mere fact that prisoners were housed in dormitory style units is insufficient to establish deliberate indifference. Because none of the facts alleged by Plaintiff show that the named Defendants were deliberately indifferent to the risk of Plaintiff contracting COVID-19, his claim is properly dismissed.

IV.    **Access to the courts**

Plaintiff claims that Defendant Hardiman violated his right of access to the courts when he denied Plaintiff's request for a legal writer to assist him in filing an administrative grievance. Defendant Hardiman's denial of a legal writer to assist Plaintiff in filing a grievance could not have barred Plaintiff from seeking a remedy for his grievance. *See Cruz v. Beto*, 405

U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

V.    **ADA and RA**

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Mingus v. Butler*,

591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[3]  In order to state a claim under Title II of the ADA, Plaintiff must show:  (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability.  *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).  The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).  The proper defendant under a Title II claim is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002).  Plaintiff expressly sues Defendants in their individual capacities only.  Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity.  *Everson*

---

[3] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together."  *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557, n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846, n.2 (6th Cir. 1995)).

*v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).  Therefore, Petitioner has failed to state a claim

against these Defendants under the ADA or the RA.  *Lee v. Michigan Parole Bd.*, 104 F. App'x

490, 493 (6th Cir. 2004) ("[N]either the ADA nor the RA impose liability on individuals."); *M.J.*

*v. Akron City School Dist. Bd. of Ed.*, 1 F.4th 436 (6th Cir. 2021) ("Neither the ADA nor the

Rehabilitation Act supports a claim against a public official acting in his or her individual

capacity.").

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the

Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide

whether an appeal of this action would be in good faith within the meaning of 28 U.S.C.

§ 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the

Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that

any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S.

438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in

good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing

fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from

proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will

be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 20, 2021                              /s/ Janet T. Neff
                                                      Janet T. Neff
                                                      United States District Judge