UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE GORDON #527260,

    Plaintiff,                                  Hon. Janet T. Neff

v.                                                Case No. 1:21-cv-415

SHERRY BURT, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jimmie Gordon, a Michigan prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF), has sued Defendants Sherry Burt and Darrell Steward pursuant to 42 U.S.C. § 1983, alleging that they violated his Eighth Amendment rights by failing to properly implement COVID-19 protocols. Presently before me is Defendants' Motion to Dismiss on the basis of qualified immunity. (ECF No. 38.) The motion is fully briefed and ready for decision.

Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** and that the case be **dismissed**.

**I.   Background**

Plaintiff filed his verified complaint in this action on May 18, 2021, against Defendants Sherry Burt and Darrell Steward, the warden and deputy warden at MCF, respectively, at the time of the events at issue in this case. Plaintiff also sued E. Hardiman, the head librarian at MCF. Plaintiff alleged that Defendants Burt and Steward violated his Eighth Amendment rights by failing to properly implement COVID-19 protocols. He also alleged claims under the Americans

with Disabilities Act and Rehabilitation Act, as well as a state-law gross negligence claim. As to Defendant Hardiman, Plaintiff alleged a First Amendment access-to-the-courts claim.

Regarding his Eighth Amendment claim, Plaintiff alleged that after Defendant Burt notified the MCF general population of the first positive COVID-19 case at the facility on July 27, 2020, Defendants Burt and Steward instructed Housing Unit 2 officers to arrange for the close-contact Unit 2 prisoners to be transferred to Unit 1, where Plaintiff was housed. (ECF No. 1 at PageID.3.) Plaintiff alleged that Defendants Burt and Steward failed to isolate the close-contact prisoners from the non-close-contact prisoners who already resided in Unit 1, and that the close-contact prisoners were allowed to access the restrooms, showers, TV-room, and day-room along with the other prisoners. Plaintiff also alleged that he was a Unit-1 porter, and neither he nor any of the other porters in Unit 1 were instructed to sanitize the areas occupied by the close-contact prisoners. (*Id.*)

Plaintiff further alleged that on or after August 2, 2020, after Plaintiff and other prisoners began to file grievances about the reckless handling of the close-contact prisoners, Defendants Burt and Steward directed that all of the original Unit-1 prisoners be moved to the gymnasium, which had been converted into dormitory-style housing space. (*Id.*) Plaintiff alleged that the bunk beds were less than 6 feet apart and that two floor-model industrial fans provided the only source of ventilation. Plaintiff made a verbal complaint to Corrections Officers Jones and Posvistak, who told him that he could either house in the gymnasium or in segregation, and that they were just following orders. (*Id.*) Plaintiff began to experience COVID-19 symptoms several days later, and on August 5, 2020, was informed that he tested positive for COVID-19 and was to be moved to isolation housing. (*Id.* at PageID.4.)

On October 20, 2021, the Court entered an Opinion and Order following initial review of Plaintiff's complaint, dismissing all claims for failure to state a claim. (ECF Nos. 6 and 7.) Regarding the Eighth Amendment claim, the Court found that Plaintiff failed to allege facts showing that Defendants Burt and Steward knowingly exposed Plaintiff, or any other prisoner, to a COVID-19 positive prisoner. The Court further noted that Plaintiff's allegations did not indicate that the close-contact prisoners were housed in the same cells as COVID-19 negative prisoners or that they were allowed to be in the communal areas of the unit unmasked and to use those areas at the same time uninfected prisoners were present. (ECF No. 6 at PageID.29.) The Court further noted that the MDOC had taken significant measures to limit the threat posed by COVID-19 and that the mere fact that prisoners were housed in dormitory-style units was insufficient to establish deliberate indifference. (*Id.* at PageID.30–31.)

Plaintiff appealed the judgment to the Sixth Circuit, which held that, with the exception of his Eighth Amendment claim, Plaintiff had abandoned his claims on appeal by failing to address the basis for their dismissal. (ECF No. 18 at PageID.84–85.) Regarding the Eighth Amendment claim, the court found that placing prisoners in dormitory style quarters during the COVID-19 pandemic satisfied the objective prong of his claim. As for the subjective prong, it stated:

> As highlighted by Gordon, many public health organizations warned of the particular risk that COVID-19 presents to prisoners and hence the need to implement and maintain social distancing. The MDOC recognized as much in developing procedures to segregate COVID-positive and close-contact prisoners from other prisoners and to sanitize areas occupied by close-contact prisoners. Yet, according to Gordon, whose allegations we must accept as true, the defendants disregarded these procedures by purposefully housing him with close-contact prisoners, allowing close-contact prisoners to commingle freely with other prisoners, and not sanitizing areas occupied by close-contact prisoners. In view of these allegations, the district court erred in concluding that the MDOC's publication of COVID-mitigation procedures defeated Gordon's claim that the defendants subjectively disregarded the risk presented by COVID-19. *See Brooks v. Washington*, No. 21-2639, 2022 U.S. App. LEXIS 8451, at *5–7 (6th Cir. Mar. 30, 2022) (order). Moreover, like the district court in *Brooks*, the district court here

3

> erred in relying on *Wilson* and *Cameron* to conclude that the mere publishing of the mitigation procedures showed that the defendants were not deliberately indifferent to the risk presented to Gordon because both of those cases were decided on motions for preliminary injunctions after factual development of the record in the district courts. *See id*. at *7. "Thus, while [Gordon] may ultimately be unsuccessful in securing the relief he seeks, he has nevertheless put forth sufficient allegations that the defendants knew of and disregarded an excessive risk to inmate health or safety." *Id.* at *7–8.

(*Id.* at PageID.86–87.)

## II. Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

### III. Discussion

Defendants move for dismissal on the basis of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

The Sixth Circuit has already determined that Plaintiff adequately states an Eighth Amendment deliberate indifference claim based on Defendants' inadequate implementation of COVID-19 protocols. The law of the case doctrine applies in this situation. The doctrine provides that "a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990)

(citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). In order for the doctrine to apply, a court must have decided the issue explicitly or by necessary implication. *See Bowles v. Russell*, 432 F.3d 668, 676-77 (6th Cir. 2005). Because the Sixth Circuit explicitly decided whether Plaintiff states a claim for violation of a constitutional right, the doctrine applies in this case. *See Braden v. Corrs. Corp. of Am.*, No. 1:05-0052, 2009 WL 290460, at *2–3 (M.D. Tenn. Feb. 2, 2009) (concluding that the Sixth Circuit's prior decision that the plaintiff failed to state a claim of deliberate indifference to his serious medical needs constituted the law of the case). In this regard, Defendants' contention that "Plaintiff fails to satisfy either prong of the qualified immunity test" (ECF No. 39 at PageID.191), is incorrect. As the Sixth Circuit has observed, "asking whether there was a violation of a constitutional right resembles the Rule 12(b)(6) question—has the plaintiff pleaded facts that state a claim for relief in the complaint?" *Crawford v. Tilley*, 15 F.4th 752, 764 (6th Cir. 2021). Here, the Sixth Circuit answered this question in the affirmative.

Only the second prong of the qualified immunity defense—whether Defendants' acts that allegedly violated Plaintiff's constitutional rights also violated clearly established law—remains open. The inquiry is thus whether qualified immunity is available at the motion-to-dismiss stage. The Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015); *see also Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008) ("Dismissals on the basis of qualified immunity are generally made pursuant Fed. R. Civ. P. 56 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions."). On the other hand, it has recognized that when the "pleadings in th[e] case are not ambiguous" and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that

6

could be proven consistent with the allegations or pleadings," a district court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005). More recently, the Sixth Circuit has explained that its statements cautioning against application of qualified immunity at the Rule 12(b)(6) stage "have more vitality in the clearly established context." *Crawford*, 15 F.4th at 765. But even this application is "nuanced," depending on whether the clearly established inquiry "turn[s] on case-specific details that must be fleshed out in discovery." *Id.*

The clearly established prong focuses on the state of the law at the time the alleged violation occurred. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). It is not enough to show that the right is established at "'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft*, 563 U.S. at 742). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993 (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019). "An official's conduct flunks this 'clearly established' test only if the conduct's unconstitutionality was 'beyond debate' when the official acted, such that any reasonable person would have known that it exceeded constitutional bounds." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021). To determine whether a right is clearly established, a district court within the Sixth Circuit may consider binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that

7

is directly on point. *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Risbridger v. Connelly*, 275 F.3 565, 569 (6th Cir. 2002)).

I conclude that in light of the circumstances surrounding COVID-19, a novel coronavirus, and the unique and unprecedented challenges prison officials faced in implementing COVID-19 precautionary measures, particularly in the early months of the pandemic (*see* ECF No. 39-5 at PageID.218 at PageID.218, Centers for Disease Control and Prevention Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (recognizing that constraints such as physical space, staffing, population, operations, and other resources and conditions may require adaptation of preventative measures)), this is an appropriate case to consider the clearly established prong at the motion to dismiss stage. *See Jones v. Burt*, No. 1:21-cv-41, 2022 WL 4244298, at *5–7 (W.D. Mich. July 15, 2022), *report and recommendation adopted in part and rejected in part*, 2022 WL 3210073 (W.D. Mich. Aug. 9, 2022) (granting motion to dismiss raising qualified immunity on claim that prison officials failed to allow social distancing in the dining hall because the plaintiff failed to show that "it was clearly established law and beyond debate that a prison employee violated the Eighth Amendment by seating two inmates at a four-person dining hall table, which resulted in less than six feet of social distancing between the two inmates"); *Brewer v. Dauphin Cnty. Prison*, No. 1:21-CV-1291, 2022 WL 16858014, at *9–10 (M.D. Pa. June 29, 2022), *report and recommendation adopted*, 2022 WL 16855566 (M.D. Pa. Nov. 10, 2022) (concluding in the alternative that the plaintiff failed to demonstrate a violation of a clearly established right because courts have declined to find a clearly established right in the context of COVID-19 in a prison setting "where prison administrators were, and still are, faced with a novel virus, and those administrators took steps to mitigate the exposure to and spread of the virus"); *Ross v. Russell*, No. 7:20-cv-774, 2022 WL 767093, at *14 (W.D. Va.

8

Mar. 14, 2022) (granting motion to dismiss based on qualified immunity on prisoner's claim that jail policies were inadequate to prevent the spread of COVID-19 because "it would not have been apparent to any of the defendants that their alleged conduct would violate [the plaintiff's] clearly established constitutional rights"); *Gasca v. Lucio*, No. 1:20-CV-160, 2021 WL 4198405, at *9 (S.D. Tex. May 24, 2021), *report and recommendation adopted*, 2021 WL 4192735 (S.D. Tex. Sep. 15, 2021) (concluding qualified immunity was appropriate on a motion to dismiss because the only pertinent authority "simply required officials to test and treat the inmates" and "[t]here was no caselaw requiring them to do more"); *Tate v. Arkansas Dep't of Corrs.*, No. 4:20-cv-558, 2020 WL 7378805, at *11 (E.D. Ark. Nov. 9, 2020), *report and recommendation adopted*, 2020 WL 7367864 (E.D. Ark. Dec. 15, 2020) (finding dismissal on qualified immunity grounds proper because "COVID-19 is, by definition, a 'novel' coronavirus" and reasonable officials would not have known that their COVID-19 response violated the plaintiff's clearly established constitutional rights").

In response to Defendants' motion, Plaintiff cites two cases, the Sixth Circuit's decision in the instant case and *Jones*, *supra*. (ECF No. 49 at PageID.428.) For obvious reasons, the Sixth Circuit's decision in this case in April 2022 cannot clearly establish the law as of August 2020. *See Cameron v. Grainger Cnty.*, 274 F. App'x 437, 439 (6th Cir. 2008) (noting that the law must be clearly established at the time of the alleged violation). As for *Jones*, Plaintiff asserts that the district judge in that case held that Defendants Burt and Steward were not entitled to qualified immunity in connection with a COVID-19-based claim arising out of MCF. (ECF No. 49 at Pageid.432.) Plaintiff is partially correct, but his point is irrelevant. In *Jones*, Magistrate Judge Kent concluded that Defendants were entitled to qualified immunity because: (1) the plaintiff could not rely on the doctrine of *respondeat superior* to establish Defendants' liability for failing to

9

isolate another prisoner who took a COVID-19 test that turned out positive; and (2) the plaintiff failed to cite any caselaw clearly establishing that a prison employee violated the Eighth Amendment by seating two inmates at a four-person dining hall table, resulting in less than six feet of social distancing. *Jones*, 2022 WL 4244298, at *6–7. In addressing the plaintiff's objections, Judge Maloney concluded that Defendants were not entitled to qualified immunity on the first claim because the plaintiff did not rely solely on *respondeat superior*, but he concluded that Defendants were entitled to qualified immunity on the table/social distancing allegation. 2022 WL 3210073, at *2. Here, Defendants do not seek qualified immunity on the basis that Plaintiff seeks to impose liability on the basis of *respondeat superior*. In short, these cases do not demonstrate that as of August 2020, it was clearly established that a defendant violates the Eighth Amendment by housing COVID-19 close-contact prisoners and non-close-contact prisoners in the same unit without isolation and failing to instruct porters to sanitize areas that were occupied by close-contact prisoners, nor do they clearly establish that a prison official's decision to house non-close-contact prisoners in a dormitory-style setting with less than six feet of social distancing between bunks and only floor fans for ventilation violates the Eighth Amendment.

Elsewhere in his brief, Plaintiff cites *Hutto v. Finney*, 437 U.S. 678 (1978), and *Helling v. McKinney*, 509 U.S. 25 (1993). (ECF No. 49 at PageID.426.) To the extent Plaintiff contends that these cases provided Defendants fair warning that their conduct was unlawful, his argument lacks merit. These cases do not place the present constitutional issue beyond debate because their facts were materially dissimilar to the present facts. The prisoners in *Hutto* were confined in punitive segregation for an indeterminate period of time, with "[a]n average of 4, and sometimes as many as 10 or 11, prisoners . . . crowded into windowless 8′x10′ cells containing no furniture other than a source of water and a toilet that could only be flushed from outside the cell." *Id.* at 682. Some of

10

the mattresses prisoners were given to use at night had been used by other prisoners with infectious diseases, such as hepatitis and venereal disease. Prisoners in isolation received fewer than 1,000 calories a day. *Id.* at 682–83. These facts do not clearly establish that Defendants' alleged deficient COVID-19 response violated the Eighth Amendment. In *Helling*, the plaintiff prisoner had been assigned to a cell with another prisoner who smoked five packs of cigarettes a day. *Id.* at 28. There is no allegation that Plaintiff was placed in a cell with a COVID-19 positive prisoner, or even a close-contact prisoner for that matter. *Helling* thus does not give clear guidance as to the lawfulness of the circumstances alleged in this action.

As stated in *Ryan v. Nagy*, No. 2:20-cv-11528, 2021 WL 6750962 (E.D. Mich. Oct. 25, 2021), *report and recommendation adopted in part*, 2022 WL 260812 (E.D. Mich. Jan. 26, 2022):

> [A] reasonable official could not have known whether their COVID-19 response would have violated Plaintiff's Eighth Amendment rights. COVID-19 is unprecedented, and humanity's knowledge of the disease has evolved drastically over the course of the pandemic. *See* Tate, 2020 WL 7378805, at *11. Accordingly, official guidance on recommended safety measures is continuously changing. For example, masks, a now ubiquitous safety measure, were once believed to only be effective in certain medical settings. *See Fact check: Outdated video of Fauci saying* "*there's no reason to be walking around with a mask*", Reuters, October 8, 2020, https://www.reuters.com/article/uk-factcheck-fauci-outdated-video-masks/ fact-checkoutdated-video-of-fauci-saying-theres-no-reason-to-be-walking-around-with-a-mask-idUSKBN26T2TR. The world's understanding of COVID-19 in [sic] constantly evolving, and there is no precedent that would have made it clear to a reasonable official that the measures Defendants took unreasonably responded to the COVID-19 pandemic.

*Id.* at *9. In short, Plaintiff fails to cite any caselaw clearly establishing that Defendants' COVID-19 response violated his Eighth Amendment rights.

### III. Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion to dismiss on the basis of qualified immunity (ECF No. 38), and dismiss Plaintiff's remaining claims with prejudice.

Dated: May 3, 2023                                  /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).